UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT FOSTER,<br><br>            Plaintiff(s),<br><br>    v.<br><br>DEVICE PARTNERS INTERNATIONAL LLC,<br><br>            Defendant(s).<br>_____/ | No. C 12-02279 (DMR)<br><br>**ORDER REASSIGNING CASE TO DISTRICT JUDGE; REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND TO DISMISS CASE WITHOUT PREJUDICE FOR LACK OF PERSONAL JURISDICTION** |

Plaintiffs Scott Foster, Key Medical, LLC, Pain Management Solutions, LLC, and Alta Medical Solutions, LLC, move the court pursuant to Federal Rule of Civil Procedure 55(b)(2) for entry of a default judgment against Defendant Device Partners International, LLC. Plaintiffs ask the court to order a reassignment of certain patent rights and other assets that Defendants presently hold. Plaintiffs also seek an order awarding attorneys' fees. For the reasons set forth below, the court recommends that Plaintiffs' motion be denied and that the case be dismissed without prejudice for lack of personal jurisdiction. In addition, Plaintiffs did not attend the hearing on the motion for default judgment, thereby evidencing a failure to prosecute this case. Because Defendant has not consented to the undersigned's jurisdiction, the court may not enter a dispositive ruling in this matter. *See* 28 U.S.C. § 636(c)(1). The court therefore orders that this case be reassigned to a District Judge.

## I. Background and Procedural History

On or about July 27, 2007, Plaintiffs Key Medical, Pain Management Solutions, and Alta Medical Solutions (collectively, "Key Medical"), all Utah limited liability companies, entered into a written agreement ("the Agreement") with Defendant, a Delaware limited liability company, regarding the purchase and sale of patents, licences, machinery, and other assets belonging to Key Medical. (Compl. Ex. A, at 3-4.) The Agreement required Defendant to make an initial payment of $50,000 to Key Medical, with subsequent monthly payments of $25,000, to pay off a $150,000 promissary note, plus royalties. (Compl. Ex. A, at 4-5.) The agreement also provided an option for Key Medical to repurchase the assets if Defendant failed to make royalty payments. (Compl. Ex. A, at 4-5.)

Pursuant to the Agreement, Key Medical transferred the patents, licences, machinery, and other assets to Defendant, and Defendant made an initial payment of $50,000 to Key Medical. (Compl. ¶ 16.) On November 11, 2007, Defendant recorded the assignment of at least some of the patents with the United States Patent and Trademark Office. (Compl. ¶ 12.) However, Plaintiffs allege that Defendant has failed to make any payments on the note or royalties. (Compl. ¶ 19.) Plaintiffs also allege that they provided Defendant with the payment and written notice necessary to exercise their option to repurchase the assets, but that Defendant failed to transfer the assets back to Plaintiffs. (Compl. ¶ 20.)

On May 4, 2012, Plaintiffs[1] filed this action for breach of contract, seeking an order reassigning the assets to them as well as an award of attorneys' fees. Plaintiffs effected service on Defendant on May 21, 2012. [Docket No. 4.] After Defendant failed to respond, Plaintiffs moved for entry of default, [Docket No. 6] which the Clerk of the Court entered on June 13, 2012. [Docket No. 7.] Plaintiffs now move for default judgment. On October 25, 2012, the court held a hearing on the motion, but neither Plaintiff nor Defendant attended.

## II. Legal Standard

---

[1] On or about April 15, 2011, Key Medical assigned its rights to the assets to Plaintiff Scott Foster. (Compl. ¶ 16.) Foster brings suit as a third-party beneficiary. (Compl. ¶ 16.)

2

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). There is no right to the entry of a default judgment; its entry is within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)); *Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 999.

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case, as well as personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

### III. Discussion

Plaintiffs maintain that this Court has subject matter jurisdiction over this case and personal jurisdiction over the parties. (Pls.' Mot. 3.) The court agrees that it has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). However, it finds that it lacks personal jurisdiction over Defendant.

Personal jurisdiction is "the power of a court to enter judgment against a person." *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). A plaintiff bears the burden of proving that a Court has personal jurisdiction over a defendant. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

1223 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1101 (2012). Generally, determining whether personal jurisdiction exists over a nonresident defendant involves two inquiries. *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 830 (9th Cir. 2005). "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." *Id.* California's long-arm statute allows courts to "'exercise jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States.'" *Id.* at 830-31 (quoting Cal. Civ. Proc. Code § 410.10). California courts do not distinguish California due process from federal due process in analyzing personal jurisdiction. *See Sanders v. CEG Corp.*, 95 Cal. App. 3d 779, 783 (1979). Therefore, the jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with the due process clause of the United States Constitution. *Dow Chem.*, 422 F.3d at 830-31.

Federal due process permits a court to exercise personal jurisdiction over a nonresident defendant only if the defendant has "minimum contacts with [the forum state] such that the assertion of jurisdiction does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotation marks omitted). In analyzing whether a defendant has minimum contacts with the forum state, courts distinguish between specific and general jurisdiction. *See Mavrix Photo*, 647 F.3d at 1223. Specific jurisdiction exists when a plaintiff demonstrates that the defendant has "purposefully directed" its activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. *Id.* (citations omitted). The Ninth Circuit applies a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 1227-28 (citation omitted). General jurisdiction, on the other hand, does not require that the cause of action arise out of or relate to the defendant's activities in the forum state, but requires that the defendant's contacts with a forum state be "'so continuous and systematic as to render them

essentially at home in the forum State.'" *Id.* at 1223 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

However, because "'[t]he personal jurisdiction requirement recognizes and protects an individual liberty interest it can, like other such rights, be waived.'" *Dow Chem. Co.*, 422 F.3d at 830 (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982)) (first brackets in original) (internal citation omitted). Therefore, "'a litigant may give "express or implied consent to the personal jurisdiction of the court."'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (quoting *Ins. Corp. of Ir.*, 456 U.S. at 703)). For example, such consent exists when parties to a contract agree in advance to submit to the jurisdiction of a given court if their agreement was "'freely negotiated'" and not "'unreasonable and unjust.'" *Id.* (quoting *Burger King*, 471 U.S. at 472 n.14)).

In this case, the court finds no basis for asserting either general or specific jurisdiction over Defendant. It is not a resident of California and does not have contacts with the state so "continuous and systematic" as to render it essentially at home in the state. It is a Delaware limited liability company, and its principal places of business are in North Carolina and New York. (Compl. ¶ 9, Ex. A.) Plaintiffs' complaint alleges that Defendant has "conducted business" in California, but provides no evidence to support a conclusion that Defendant has conducted this business continuously and systematically. (*See* Compl. ¶ 2.) Thus, there is no basis for finding that general jurisdiction exists over Defendant. Meanwhile, specific jurisdiction does not exist because the injuries alleged by Plaintiffs have not arisen from activities that Defendant "purposefully directed" at residents of California. Any injuries have resulted from Defendant's breach of a contract that it signed with Plaintiffs, all Utah residents. Thus, the Court cannot assert jurisdiction over Defendant on the basis of Defendant's "minimum contacts" with California.

Plaintiffs argue that the Court may nonetheless exercise personal jurisdiction over Defendant because Defendant "consented to resolve any disputes regarding the contract [it] entered into and then subsequently breached, in 'San Francisco[,] California.'" (Pls.' Supplemental Br. 2-3.)[2] Specifically, Plaintiffs point to paragraph 14.10 of the Agreement, which states that "[a]ny

---

[2] The court ordered Plaintiffs to provide supplemental briefing on the issue of whether this Court can exercise jurisdiction over Defendant. [Docket Nos. 11, 12.]

5

controversy or claim arising from or relating to this Agreement, or its making, performance, or interpretation, will be settled by Arbitration in San Francisco, California." (Compl. Ex. A, at 19.) Plaintiffs contend that when Defendant agreed to arbitrate any disputes arising from the Agreement in San Francisco, it agreed to submit to the jurisdiction of California courts. (Pls.' Supplemental Br. 3-4.)

The Ninth Circuit has left open the question of whether an agreement to arbitrate disputes in a forum state constitutes consent to personal jurisdiction in that state. *See Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893-94 (9th Cir. 1996). In *Fireman's Fund*, the district court had determined that the defendant had consented to personal jurisdiction in California by entering into an agreement that included a clause obligating the parties to submit all disputes relating to the agreement to binding arbitration in San Francisco. *Id.* at 891, 893-94. On appeal, the Ninth Circuit held that the district court had personal jurisdiction over the defendant on other grounds: because the plaintiff's cause of action arose out of the defendant's activities in California. *Id.* at 893-94. The court declined to address whether "the arbitration clause . . . amount[ed] to [the defendant's] consent to personal jurisdiction in California." *Id*. The Ninth Circuit has not clarified its position on the issue since. *See Johnson v. Mitchell*, CIV S-10-1968 GEB, 2012 WL 1594203, at *3 (E.D. Cal. May 4, 2012) (citing *Fireman's Fund* to indicate that Ninth Circuit has not definitively ruled on whether agreement to arbitrate disputes in forum state is by itself consent to personal jurisdiction in that state).

Other courts have found that an agreement to arbitrate disputes in a forum state constitutes consent to personal jurisdiction in that state for the purposes of enforcing the arbitration agreement. *See St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.*, 270 F.3d 621, 624 (8th Cir. 2001); *Armstrong v. Assocs. Int'l Holdings Corp.*, 242 F. App'x 955, 957 (5th Cir. 2007); *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 979 (2d Cir. 1996); *Union Mutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 527 (1st Cir. 1985). However, by and large, these courts have not demonstrated a willingness to find that agreements to arbitrate give rise to personal jurisdiction for purposes not directly related to the agreement to arbitrate. In *Armstrong*, the Fifth Circuit stated that a party agreeing to arbitrate in a particular state consents to personal jurisdiction in that state only

1 "for the limited purpose of compelling arbitration." 242 F. App'x at 957. Other circuits have not
2 explicitly limited the circumstances under which they will find an agreement to arbitrate to
3 constitute consent to personal jurisdiction. However, the actions in which they have found personal
4 jurisdiction to exist based on an arbitration agreement have been almost exclusively actions to
5 enforce arbitration agreements. *See e.g., St. Paul Fire & Marine*, 270 F.3d at 622; *Doctor's Assocs.*,
6 85 F.3d at 979; *Union Mutual*, 774 F.2d at 527. This court has found only one case, *Menorah*
7 *Insurance. Co., v. INX Reinsurance. Corp.*, where a court has invoked an arbitration agreement to
8 find personal jurisdiction in an action that went beyond an motion to enforce an arbitration
9 agreement or award. 72 F.3d 218, 222 (1st Cir. 1995). *Menorah* appears to be an aberration.[3] Thus,
10 the cases that have considered this issue provide little support for Plaintiff's contention that the
11 arbitration clause in the Agreement gives this Court personal jurisdiction over Defendant for all
12 disputes arising from the Agreement. (Pls.' Supplemental Br. 2.)

13 Furthermore, where courts have held that an agreement to arbitrate in a state implies consent
14 to the personal jurisdiction of that forum's courts, even if only for the purpose of enforcing the
15 arbitration agreement, they have justified their decisions with an interpretation of Section 4 of the
16 Federal Arbitration Act, 9 U.S.C. § 4, that does not mesh with the case law of the Ninth Circuit.
17 These Courts have determined that jurisdiction to compel arbitration must exist in the courts of the
18 forum that the parties have selected for arbitration because to hold otherwise would render the
19 agreement to arbitrate effectively unenforceable. *See St. Paul Fire & Marine*, 270 F.3d at 624;
20 *Doctor's Assocs.*, 85 F.3d at 979. This conclusion – that an arbitration agreement would be
21 unenforceable if jurisdiction did not exist in the forum that the parties have selected for arbitration –

---

[3] In *Menorah*, the First Circuit found that the defendant had consented to personal jurisdiction in Tel Aviv by voluntarily entering into reinsurance agreements with an Israeli corporation that specified Tel Aviv as the site for any arbitration proceedings. 72 F.3d at 222 n.6. Citing *Union Mutual*, the court stated that "[i]n the commercial context a forum selection clause, even one for arbitration, confers personal jurisdiction on the courts of the chosen forum." *Id.* However, *Union Mutual* held only that "the parties agreed to arbitrate in a particular forum and thus may be expected to have consented to the jurisdiction of that forum's courts *in a request for an order compelling arbitration*." *Union Mutual*, 774 F.2d at 527 (emphasis added). This court has not found any precedent for *Menorah's* expansive interpretation of *Unionmutual's* holding or any case that has followed it, and the *Menorah* opinion offered no justification for its departure. Because *Menorah's* holding does not appear representative of or influential on the way that other courts have treated this issue, it does not persuade this court that it should follow suit.

is in turn based on these courts' shared interpretation of Section 4.  *See St. Paul Fire*, 270 F.3d at 624; *Doctor's Assocs*, 85 F.3d at 979.  The Eighth Circuit's discussion in *St. Paul Fire & Marine* is representative:

> Implying consent to personal jurisdiction from the forum selection clause in an agreement to arbitrate is necessary to implement the statutory requirement that an arbitration hearing must be held "within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. When the agreement to arbitrate includes a forum selection clause, most courts have concluded that "only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4 [of the Federal Arbitration Act]."  Thus, if the court in the selected forum did not have personal jurisdiction to compel arbitration, the agreement to arbitrate would be effectively unenforceable, contrary to the strong national policy in favor of arbitration.

85 F.3d at 979 (first brackets in original) (internal citation omitted); *accord Doctor's Assocs*, 85 F.3d at 979.  Because these courts interpret Section 4 to require that the forum in which the parties agreed to arbitrate is the only forum in which they can compel arbitration, denying jurisdiction in that forum would render the arbitration agreement unenforceable.  To avoid this outcome, these Courts construe a party's agreement to arbitrate in a particular forum as a limited consent to the personal jurisdiction of that forum's courts.

The Ninth Circuit's interpretation of Section 4 of the Federal Arbitration Act, however, does not compel the same result.  Unlike other Circuits, the Ninth Circuit has held that under Section 4, a party may compel arbitration in any court where personal jurisdiction and venue are otherwise proper.  In other words, a party may file a motion to compel arbitration in a forum other than that in which the arbitration should occur.  *See Textile Unlimited, Inc. v. A..BMH & Co., Inc.*, 240 F.3d 781, 784-85 (9th Cir. 2001).  Because parties may seek enforcement of arbitration agreements in fora other than the arbitration forum, the legal reasoning undergirding other Circuits' finding personal jurisdiction in the arbitration forum does not exist in this Circuit.  *See id.*  Consequently, other Circuits' case law finding personal jurisdiction in the forum specified in an arbitration clause is not persuasive in this case.

In the absence of any compelling authority to the contrary, the court declines to find that Defendant consented to the personal jurisdiction of this Court for all causes of action relating to the Agreement simply because the Agreement includes a clause requiring the parties to arbitrate

...

disputes in San Francisco. On its face, the arbitration clause says nothing about either party consenting to the personal jurisdiction in California. Without more, the court will not read the agreement to say more than it explicitly states.

Because Defendant has not had sufficient contacts with this forum and has not consented to personal jurisdiction in California, the Court lacks jurisdiction to enter judgment against it.[4]

## IV. Conclusion

For the foregoing reasons, the court recommends that the District Court deny the Plaintiffs' Motion for Default Judgment and dismiss this case without prejudice for lack of personal jurisdiction over Defendant. The court orders this case reassigned to a District Judge.

Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2. Failure to file timely objections "may waive the right to appeal the District Court's order." *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. 10-5568 EDL, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

IT IS SO RECOMMENDED.

Dated: November 21, 2012



DONNA M. RYU
United States Magistrate Judge

---

[4] Because the court lacks personal jurisdiction over Defendant, the court need not consider the *Eitel* factors to determine whether it should grant default judgment.